NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHAEL M., *Appellant*,

*v.*

ANITA P., M.M., *Appellees*.

No. 1 CA-JV 19-0111
FILED 9-24-2019

Appeal from the Superior Court in Maricopa County
No. JS19479
The Honorable Jose S. Padilla, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Burguan Strickman Law, PLLC, Phoenix
By Jessica J. Burguan, Brian M. Strickman
*Counsel for Appellee Anita P.*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**C R U Z**, Judge:

**¶1**　　　　Michael M. ("Father") appeals the juvenile court's order terminating his parental relationship to his child, M.M.　For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　M.M. was born in July 2008 to Father and Saundra P. ("Mother").　In December 2010, Father was incarcerated for a class 2 felony sexual assault, and he has been continuously incarcerated ever since. Father was ultimately convicted and sentenced to ten years in prison on November 9, 2011, with a maximum release date of December 1, 2020. Father alleges that he has an anticipated early release date in September 2019.

**¶3**　　　　In a prior dependency action in 2017, Appellee Anita P., who is M.M.'s maternal grandmother, was granted permanent guardianship over M.M. pursuant to Arizona Revised Statutes ("A.R.S.") section 8-871. Mother subsequently passed away in December 2017.

**¶4**　　　　In February 2018, Appellee filed a petition for termination of Father's paternal rights based on both the nature of his felony conviction and the length of felony sentence pursuant to A.R.S. § 8-533(B)(4).　Appellee also expressed an interest in adopting M.M.

**¶5**　　　　After a three-day severance adjudication ending in early March 2019, the court granted the petition based on length of felony sentence, and Father timely appealed.　We have jurisdiction pursuant to A.R.S. §§ 8-235, 12-120.21(A)(1), and 12-2101(A)(1).

**DISCUSSION**

I.      The Juvenile Court Did Not Err in Allowing Appellee's Termination Petition to Proceed While Guardianship Was in Place

**¶6**          Father argues that Appellee cannot simultaneously be a permanent guardian and petition to terminate a parent's rights.  But under A.R.S. § 8-533(A), "[a]ny person or agency that has a legitimate interest in the welfare of a child, including, but not limited to, *a relative . . .* may file a petition for the termination of the parent-child relationship." (emphasis added).  The statute does not exclude permanent guardians.  Appellee is both the maternal grandmother and the permanent guardian of M.M.  Appellee has played the role of caregiver for almost the entirety of M.M.'s life, even while Mother was alive.  As such, Appellee has a legitimate interest in the welfare of the child, and nothing precluded her from filing a severance petition.

**¶7**          Father argues that "[a]s a matter of law, the Juvenile Court erred in allowing a termination action to move forward while there was a court-appointed Title 8 Guardian for the child" and that "procedurally, there must be a finding to revoke the guardianship through a showing of change of circumstances by clear and convincing evidence . . . before the [J]uvenile [C]ourt should be terminating a parent's rights."  However, Father offers no legal authority to support this proposition.  Guardianship proceedings and the termination of the parental relationship are two independent legal proceedings, and there is nothing in Title 8 to suggest that the existence of a Title 8 guardianship would preclude termination of the parent-child relationship.

**¶8**          Father offers that a guardianship order is a "final order of the court," and so "there is no reason to upset the legal posture of his child being under a guardianship."  However, guardianship placements are anything but final, and revocation of a guardianship order is expressly authorized by statute.  *See* A.R.S. § 8-873.  Thus, the court did not err in considering a petition to terminate paternity while a guardianship was in place.

II.     Termination of Parent-Child Relationship

**¶9**          Father also argues that the court erred in terminating the parental relationship pursuant to A.R.S. § 8-533(B).  In order to terminate a parental relationship, the juvenile court must make a two-part inquiry. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018).  First, the court must find by clear and convincing evidence at least one of the grounds

for termination in A.R.S.§ 8-533(B).  *Id.*  Second, the court must find by a preponderance of the evidence that severance is in the child's best interests. *Id.*  We will "accept the juvenile court's findings of fact if reasonable evidence and inferences support them, and will affirm a severance order unless it is clearly erroneous." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

> A.    Reasonable Evidence Supports the Juvenile Court's Determination that the Statutory Ground for Termination Was Established

¶10        The juvenile court terminated Father's parental relationship pursuant to A.R.S. § 8-533(B)(4).  As applicable here, this section of the statute permits termination where a parent has been convicted of a felony "if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years."  A.R.S. § 8-533(B)(4). Pursuant to A.R.S. § 8-533(B)(4), the juvenile court considers "all relevant factors, including, but not limited to" the following:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251-52, ¶ 29 (2000).

¶11        The analysis of these factors is an "individualized, fact-specific inquiry." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007).  The juvenile court is not required to make express findings on each factor, and its findings will be affirmed if supported by reasonable evidence.  *Id.* at 451-52, ¶ 19.  Here, the record contains reasonable evidence to support the juvenile court's decision to terminate the parental relationship.

¶12        As to the first factor, Father has been continuously incarcerated since M.M. was two years old.  Although Father asserts that he parented M.M. the first three years of M.M.'s life and up to his incarceration, and that he and M.M. were "best friends," Father has been incarcerated for the overwhelming majority of M.M.'s life.  Additionally,

psychologist Dr. Toma conducted a home, bonding, and attachment evaluation prior to Mother's death and during Father's incarceration. Dr. Toma testified that M.M. "doesn't know [Father]" and that M.M. "has never been parented by [Father] probably that he can remember" because "[w]e start having memories about the age of two."

¶13        The second factor concerns the degree to which M.M. and Father's relationship can be continued and nurtured during his incarceration. *Michael J.*, 196 Ariz. at 252, ¶ 29. Father testified that Mother brought M.M. to visit Father 30-40 times during the time Father was incarcerated, and that he and M.M. exchange letters and speak on the phone. Father additionally claims that he has paid $15,000 to support M.M. in the years during his incarceration. However, Appellee testified that Father has never contributed to the support of M.M. Appellee further testified that M.M. refused to accept Father's phone calls since March 2018 and no longer wishes to have contact with him. A court-ordered investigation from August 2018 corroborated that M.M. had refused contact with Father since January 2018. The last time M.M. visited Father in prison was April or May of 2017.

¶14        The third factor considers the age of the child and the likelihood incarceration would deprive M.M. of a normal home. *Id.* As noted above, M.M. was only two years old when Father was first imprisoned, and Father has been continuously imprisoned for the past eight years. Even if Father's testimony regarding his early release date in September 2019 is accurate, the court must consider the entire period of the parent's incarceration, not just the amount of time remaining on the sentence. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 281, ¶ 8 (App. 2002). Father has not been able to provide M.M. with a normal home life, and the court found that M.M. "has been deprived for eight years from a normal parent-child relationship."

¶15        The fourth factor evaluates the length of the sentence. *Michael J.*, 196 Ariz. at 252, ¶ 29. As stated above, Father has been incarcerated for about eight years and was sentenced to ten years in prison. Father has been incarcerated for over two-thirds of M.M.'s life.

¶16        The fifth factor considers the availability of another parent to provide a normal home life. *Id.* Mother has been deceased since December 2017. While Father is in prison, there is no natural parent to provide a normal home life for M.M.

¶17        Finally, the sixth factor concerns the effect of the parent's absence on the child.  *Id.*  As a result of Father's incarceration, M.M. identifies his grandmother as his only day-to-day parental figure.  M.M.'s bond to Appellee is such that M.M. desires to continue to reside with her at least until his age of majority.

¶18        Reasonable evidence and inferences from the record support each of the six factors outlined in *Michael J.*  Thus, the juvenile court's termination of the parental relationship pursuant to A.R.S. § 8-533(B)(4) was not erroneously decided.

¶19        Father argues that the court should have considered the strength of the parent-child relationship existing when Father's incarceration began, the degree to which the relationship was continued and nurtured during his incarceration, and the length of Father's incarceration.  The court did expressly consider these factors.  Regarding the strength of the relationship prior to incarceration, the court stated that less than "one-third of [M.M.'s] life is what Father enjoyed with the child."  The juvenile court also inferred, based on the record, that the child likely witnessed domestic violence between Father and Mother prior to Father's incarceration and considered that a detrimental impact on M.M.

¶20        The court also evaluated the relationship between M.M. and Father during incarceration, finding the only evidence of Father's efforts to maintain a relationship were mailing letters, and any prior visitation was "at the behest of" Mother and her family before her passing.  Additionally, the court acknowledged Father's testimony that he was set to be released early in September 2019.  However, in weighing this testimony, the court also considered the likelihood of early release, as "[Father] had suffered 10 infractions while he's in [the Department of Corrections]."  The court made express findings on the factors Father contests, and the findings are supported by reasonable evidence.  To the extent Father asks that this court reweigh the evidence and the *Michael J.* factors, such a reweighing by an appellate court is improper.  *See Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 336, ¶ 14 (App. 2004).  The juvenile court considered the appropriate factors and did not abuse its discretion by finding a basis for severing Father's parental rights.

> B.        Reasonable Evidence Supports the Court's Best Interests Determination

¶21        Father argues there is no evidence that termination of Father's parental relationship was in M.M.'s best interests.

**¶22** Termination is in the child's best interests when evidence demonstrates the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Oscar O.*, 209 Ariz. at 334, ¶ 6. "[C]ourts must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S.*, 245 Ariz. at 148, ¶ 1.

**¶23** Evidence of the availability of an adoption plan, a child's adoptability, and that an existing placement is meeting the child's needs supports a finding that the child would benefit from termination of the parental-child relationship. *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013); *see also Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998); *see also Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994).

**¶24** Father argues that he had consistent contact with M.M. until March 2018, and there was no evidence that M.M.'s continued relationship with Father would be detrimental. However, the consistency of contact between Father and M.M. was in dispute. Appellee testified that she only brought M.M. to visit Father one time during his incarceration in April or May 2017, though she also testified that she was aware of some visits that took place between Father and M.M. when M.M. was younger. However, more recent visits have been less frequent, and as explained above, M.M. no longer wants to have contact with Father and has refused phone calls from him. Father has been in prison for most of M.M.'s life, and the court did not abuse its discretion by finding that it would be detrimental to remove M.M. "from the stable home he has had for the last two years."

**¶25** Father further argues that there is no benefit to terminating Father's parental relationship, and that stability and security are attainable through the guardianship placement. However, severance and adoption provide the type of finality, permanency, and security that is not possible through a guardianship. Appellee seeks to adopt M.M. It is uncontested that M.M.'s current placement with Appellee is meeting M.M.'s needs, and he wants to continue to reside with Appellee. Thus, the court's best interest finding was not in error.

III.    Father Has Shown No Error Regarding Juvenile Court's Factual Findings

**¶26** Father argues that the court failed to enter factual findings in its written order, violating A.R.S. § 8-538(A) and Arizona Rule of Procedure

for the Juvenile Court ("Rule") 66(F)(2)(a). However, father has waived this argument by failing to object to the court's factual findings at the trial level.

**¶27** "We generally do not consider objections raised for the first time on appeal. This is particularly so as it relates to the alleged lack of detail in the juvenile court's findings." *Christy C.*, 214 Ariz. at 452, ¶ 21 (citations omitted). Alleged errors should be called to the juvenile court's attention for correction, as the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Oscar O.*, 209 Ariz. at 334, ¶ 4.

**¶28** Citing *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532 (App. 2018), Father asserts that waiver should not apply. In *Logan B.*, this court did not find waiver where the final written order at issue was devoid of *any* factual findings. *See Logan B.*, 244 Ariz. at 536, ¶ 11. However, in the instant case, Father concedes there is at least one factual finding in the order. Moreover, "*Logan B.* noted that '[t]he waiver doctrine is not "an unalterable rule"' and 'the decision to find waiver is discretionary.'" *Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 573, ¶ 12 (App. 2018) (quoting *Logan B.*, 244 Ariz. at 536, ¶¶ 11, 9); *see also Aleise H.*, 245 Ariz. at 573, ¶ 13 ("Because the decision to find waiver is discretionary, in the exercise of that discretion, on the record presented and to prevent avoidable delay, this court concludes that [m]other has waived any claim she may have had that the superior court did not make adequate best interests findings.").

**¶29** Waiver notwithstanding, Father has not shown error. A.R.S. § 8-538(A) requires that orders terminating the parent-child relationship "shall be in writing and shall recite the findings on which the order is based." Rule 66(F)(2)(a) additionally requires the court to "[m]ake specific findings of fact in support of the termination of parental rights." This court has interpreted Rule 66(F)(2)(a) to require that the court specify at least one factual finding sufficient to support each of those conclusions of law. *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 22 (App. 2012).

**¶30** Here, the court terminated the parental relationship based on the length of Father's felony conviction, *see* A.R.S. § 8-533(B)(4), noting he "has been incarcerated for over two thirds of child's life." In its written order, the court also found that "[t]ermination furthers the ultimate goal of adoption by [Appellee] allowing for child to have permanency and stability until the age of majority." The order additionally noted that M.M. has been residing with Appellee and "wants to continue to reside with [Appellee] until at least the age of majority." Thus, Father has not established that the

court's findings were insufficient to support severance of the parental relationship.

## CONCLUSION

**¶31**     We affirm the juvenile court's order terminating the parental relationship between Father and M.M.

